877 P.2d 799

STATE of Arizona, Appellee,

v.

Michael ECCLES, Appellant.

No. CR–93–0310–PR.

Supreme Court of Arizona, En Banc.

July 14, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Robert S. Golden, Phoenix, for appellee.

Barbara C. Sattler, Tucson, for appellant.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

Defendant Michael Eccles petitioned this court to review a memorandum decision of the court of appeals that (1) held that there was a sufficient factual basis to support his guilty pleas and (2) approved a condition of probation requiring him to waive his privilege against self-incrimination. We granted review only on the self-incrimination issue and now vacate the portion of the court of appeals' decision dealing with that issue. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

### FACTS AND PROCEDURAL HISTORY

Defendant pled guilty to molestation of a child under 14 years of age and to attempted sexual conduct with a minor under 14 years of age. The trial court sentenced defendant to prison on one of the counts and to lifetime probation on the other. Although the written plea agreement did not specifically so provide, the trial judge orally told defendant that, as one of the conditions of probation, and as a "critical part of the Sexual Offender Treatment Program," defendant must agree to

> waive any and all rights against [self-incrimination], granted under the United States and/or the State of Arizona constitutions, by answering truthfully, any questions that the probation officer, counselors, polygraph examiners, or any other agent of the Probation Department's treatment programs—whether the question concerns the offense for which you are on probation, or for any other event of sexual contact, whether charged or uncharged—any answers you give may be used, not only in treatment, but also in the—if the offense is not previously known to the State—as evidence to revoke your conditions of probation, or for the filing of new charges, and at trial, on those new charges.
>
> Refusal to follow any of these instructions would be a violation of your conditions of probation, and can result in a revocation of probation, and imposition of a prison sentence.

### ISSUES

1. Whether the state can impose mandatory waiver of the privilege against self-incrimination as a condition of probation.

2. Whether defendant voluntarily waived his right against self-incrimination.

### DISCUSSION

**Mandatory Waiver as a Condition of Probation**

The state concedes that if we reject its voluntary waiver argument, discussed *infra*, the probation condition is at least partially invalid. *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), makes clear that the state cannot make waiver of the privilege against self-incrimination a condition of probation. In *Murphy*, one of the conditions of the defendant's probation was that he would be truthful with his probation officer "in all matters." *Id.* at 422, 104 S.Ct. at 1139. In analyzing whether this condition improperly forced the probationer to choose between incriminating himself and jeopardizing his probation, the Court stated that

> [o]ur decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment

privilege.... [T]he State submits that it would not, and legally could not, revoke probation for refusing to answer questions calling for information that would incriminate in separate criminal proceedings. *Id.* at 438, 104 S.Ct. at 1148. Not only is the state prohibited from revoking probation for a legitimate invocation of the privilege against self-incrimination, we perceive the import of the *Murphy* decision as being that the state is also prohibited from making waiver of the privilege a term of probation.

The Court ultimately held that the precise condition of probation involved in *Murphy* did not improperly impinge on probationer's Fifth Amendment rights because it did not require him "to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." *Id.* at 436, 104 S.Ct. at 1147. Instead, the *Murphy* condition merely required the probationer to speak truthfully about matters relevant to his probationary status. The Court reasoned that because the probation condition was silent about the probationer's freedom to choose not to answer particular questions, and "contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege," it did nothing more that proscribe false statements. *Id.* at 437, 104 S.Ct. at 1147.

Unlike the condition involved in *Murphy*, the probation condition at issue in this case plainly took the "extra, impermissible step" by attempting to require defendant to waive his right against self-incrimination under penalty of having his probation revoked. *Id.* at 436, 104 S.Ct. at 1147. The state may not force defendant to choose between incriminating himself and losing his probationary status by remaining silent. The fact that defendant has not yet been presented with the dilemma of either incriminating himself or jeopardizing his probation does not affect our decision. The Supreme Court has held that "the mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it

confers on penalty of the loss of employment." *Gardner v. Broderick,* 392 U.S. 273, 279, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968); *see also Murphy,* 465 U.S. at 444, 104 S.Ct. at 1151 ("[T]he State's *attempt* to coerce self-incriminating statements by promising to penalize silence is itself constitutionally offensive....") (Marshall, J., dissenting).

The condition of probation that requires defendant to waive his Fifth Amendment rights is unconstitutional and must be removed from the terms of his probation. The condition thus sanitized would read: as a "critical part of the Sexual Offender Treatment Program," defendant must agree to "answer[ ] truthfully, any questions [asked by] the probation officer, counselors, polygraph examiners, or any other agent of the Probation Department's treatment programs." Like the condition at issue in *Murphy,* this sanitized condition would merely proscribe false statements and require defendant to respond to questions that could not incriminate him in future criminal proceedings; it would not prohibit him from validly asserting the privilege against self-incrimination and would not penalize him for so doing.

■ The state correctly concedes that defendant's probation cannot be revoked for a *valid* assertion of the privilege against self-incrimination. We emphasize the word valid. Defendant must truthfully answer all questions that could not incriminate him in future criminal proceedings.[1] To the extent he has lost the privilege on offenses for which he has been convicted, he must answer, even if his answers may be evidence of probation violations and result in revocation. Furthermore, we do not hold that defendant may not incriminate himself; to avoid doing so, he must assert the privilege at the appropriate time. Without the impermissible condition of probation, defendant is free to claim the privilege and must do so if he desires not to incriminate himself.

We recognize that by asserting the privilege, defendant may be refusing to disclose

---

1. A probation revocation proceeding is not a criminal proceeding. *Murphy,* 465 U.S. at 435 n. 7, 104 S.Ct. at 1146 n. 7.

conduct which constitutes both a probation violation and a new criminal offense. The Supreme Court addressed this concern in a footnote in *Murphy* and stated that "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." *Murphy,* 465 U.S. at 436 n. 7, 104 S.Ct. at 1147 n. 7. Thus, the state may compel answers to incriminating questions only if it offers the probationer use immunity. *See id.* at 439, 104 S.Ct. at 1148 ("We have not been advised of any case in which Minnesota has attempted to revoke probation merely because a probationer refused to make nonimmunized disclosures....").

**The Issue of Voluntary Waiver**

 The state argues that "[a]ppellant's failure to reject the special condition should be viewed as a voluntary waiver of his privilege against self-incrimination." The state also argues that defendant has waived appellate review by not objecting in the trial court at the time the condition was imposed. According to the state, defendant should have rejected the condition of probation and accepted instead a mandatory, consecutive prison sentence on the count on which he received probation. Essentially, the state is arguing that although the condition of probation is constitutionally repugnant, defendant may still voluntarily accept it and does so by not specifically rejecting it and opting for additional imprisonment.

We reject both of the state's waiver arguments. Our substantive holding requires that the unconstitutional condition be eliminated from defendant's probationary scheme. Under the facts of this case, it cannot be said that defendant voluntarily accepted a term of probation that never should have been imposed. We cannot harmonize a constitutional rule forbidding a requirement that a probationer waive his privilege against self-incrimination with a holding that a probationer nevertheless waives the illegality by not expressly rejecting the forbidden condition and opting for additional imprisonment. Had he done so, the forbidden provision would be inapplicable and not subject to review anyway. Furthermore, because the condition is constitutionally repugnant, we cannot permit its enforcement at a later date even though defendant did not object at the time it was imposed.

**DISPOSITION**

We modify the terms of defendant's probation to conform to this opinion and vacate that portion of the court of appeals' memorandum decision dealing with defendant's conditions of probation.

FELDMAN, C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.